## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------X

**NICHOLAS SANDS, and SANDS & COMPANY, INC.,**

                              **07 CIV 9824**

                **Plaintiffs,**

        **-against-**                        **Judge Robert Sweet**

**LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN,**

                          **Defendants.**

----------------------------------------------------------------------------X

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF DEFENDANT'S
### <u>MOTION FOR SUMMARY JUDGMENT</u>

### INTRODUCTION

Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** (hereinafter "THE BERNSTEINS) submits this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment as to all issues and all claims in this matter.   THE BERNSTEINS respectfully contend that, as a matter of law, they are entitled to a summary judgment on the grounds that there are no disputed issues of material fact requiring trial and defendants are entitled to judgment in their favor as a matter of law; together with such other and further relief as to this court may seem just and proper.  Or, in the alternative, THE BERNSTEINS respectfully request the right to amend their answer to assert a counter-claim against SANDS for conversion.

# TABLE CONTENTS

MOTION FOR SUMMARY JUDGMENT ................................................................ 2
INTRODUCTION ............................................................................................... 2
TABLE CONTENTS ........................................................................................... 3
PROCEDURAL HISTORY ................................................................................... 4
BACKGROUND ................................................................................................ 4
ARGUMENT ..................................................................................................... 5
    I.   STANDARD OF REVIEW ......................................................................... 6
    II.   ELECTRIC CHAIR ................................................................................. 8
    III.  MARTINSON COFFEE ............................................................................ 9
    IV.  LEAVE TO AMEND ANSWER ................................................................ 11
CONCLUSION ................................................................................................. 11

## PROCEDURAL HISTORY

1.    Plaintiffs NICHOLAS SANDS and SANDS & COMPANY INC.
(hereinafter "SANDS") brought an action in the United States District Court, Southern
District of New York on November 6, 2007, seeking Declaratory Judgment Relief Under
28 U.S.C § 2201 and compensatory damages for an alleged Breach of Contract against
LENOARD BERNSTEIN and JANE HOLMES BERNSTEIN (hereinafter "THE
BERNSTEINS"). (A copy of Plaintiff's complaint is annexed hereto as Exhibit "A").

2.    Additionally, SANDS seeks payment in the amount of One Hundred
Seventy Thousand Dollars ($170,000.00) for the alleged Breach of Contract against THE
BERNSTEINS for services rendered relating to the sale of an original painting by Andy
Warhol titled "Martinson Coffee" ("Martinson"). (A copy of Defendant's answer and
Pacer printout is annexed hereto as Exhibit "B").

## BACKGROUND

### I.    ELECTRIC CHAIR

3.    THE BERNSTEINS are the sole owners of the painting Electric Chair.

4.    In 1997, THE BERNSTEINS sought to have Electric Chair authenticated
as an original work of art by the late Andy Warhol.

5.    In the art world, the Andy Warhol Authentication Board ("Warhol
Board") is the only body currently authorized to certify works of art by Andy Warhol.
(See Exhibit "A")

6.    In 1997, THE BERNSTEINS agreed to let SANDS seek certification
through the Warhol Board but Electric Chair was ultimately rejected as an authentic
Andy Warhol.

7.    On February 15, 1997 THE BERNSTEINS entered a agreement to have SANDS present THE BERNSTEINS' painting, Electric Chair, to a "higher level." SANDS further claimed that he was going to present the painting to "certain well-known authorities" and subsequently challenge the Warhol Board's rejection.  (A copy of the February 15, 1997 agreement is annexed hereto as Exhibit "C").

8.    The agreement authorized SANDS to hold the painting, "on [THE BERNSTEINS] behalf."  Further, SANDS stated in the agreement, "it is my understanding that if I succeed in having the piece authenticated *this year*, you will sell it back to me for the same price." (Italics added).  (See Exhibit "C")

9.    During the course of the next 10 months, SANDS was not able to authenticate the painting or to overturn the Warhol Board's rejection.

10.    On December 14, 1997, SANDS unilaterally extended the agreement to last "1998 or longer if needed." (A copy of the December 14, 1997 unilateral agreement is annexed hereto as Exhibit "D").

11.    Over the next nine years, SANDS continually failed to authenticate Electric Chair, and, as demonstrated by the emails cited below, THE BERNSTEINS have repeatedly asked to have the painting returned.

> From: LB
> To: NS
> November 20, 2005
> Re Electric Chair, we would really like to have it back. You can always get it again if you need it. (A copy of emails exchanged between SANDS and THE BERNSTEINS are annexed hereto as Exhibit "E").

5

From: NS
To: LB
November 24, 2005
Re Electric Chair: If you really want the piece back, then of course I will be happy to send it, with the understanding (as you mentioned) that I may continue to work on it as always, and can have the piece back if I need it. As far as my shipping the piece, would it be okay if I arrange this after you return from Trinidad? I am really jammed up at the moment planning trips to London and elsewhere…kindly let me know. (See Exhibit "E")

From: LB
To: NS
November 25, 2005
Re Electric Chair, of course you can have it back whenever you need it. After all it is to both our advantage that it get straightened out. We would just like to have it here as it has been what – 4 years or so that it's been in your place. There is no get it here and let's wait until April/May as we would like to plan a weekend in NYC and could carry it back. (See Exhibit "E")

From: LB
To: NS
April 4, 2007
During our conversation we also asked you to return the Electric Chair painting to us upon our return. We are back and want you to return it to us. We want it returned [with] its original frame, as you did not have our permission to change the frame. I trust the frame you put on has not made any differences or changes in the canvas or the pigments. At this point, we will do nothing further until the Electric Chair is returned to us. (See Exhibit "E")

From: LB
To: NS
April 24, 2007
Re email to you dated April 4, 2007 about returning the "Electric Chair" painting back to us, we have not as yet received it. We are leaving for Trinidad on May 12th and want the painting in our possession before we leave. Have you made arrangements yet to send it to us? (See Exhibit "E")

However, SANDS has not been able to authenticate Electric Chair nor has SANDS returned Electric Chair to THE BERNSTEINS.

## II.   MARTINSON

12.     In April 2006, THE BERNSTEINS and SANDS began discussing the possible sale of another Warhol work titled Martinson Coffee ("Martinson").

13.     SANDS began researching the possible auction value of Martinson and discussed representing THE BERNSTEINS in Martinson's sale.  Concurrently, THE BERNSTEINS were in discussions with Sotheby's to auction the painting directly through the auction house as there was no agreement or any understanding as to exclusivity of same.

14.     SANDS claims putting significant effort towards the sale of Martinson and further claims shopping Martinson to potential buyers.  As demonstrated by the email cited below, THE BERNSTAINS asked SANDS to provide evidence of a ready, able and willing buyer.

> From: LB
> To: NS
> June XX, 2006
> Unless I have something concrete from you, our bias is to go under the hammer with Sotheby's.  Just giving the painting to you to offer for sale is just too nebulous.  If you have identified a buyer(s), then we need a firm sales figure, which could tempt us to take your bird in the hand for the hammer in the bush.  (See Exhibit "E")

To date, SANDS still has not provided evidence of any ready, able and willing buyer.

15.     As a result, THE BERNSTEINS signed an agreement with Sotheby's to have them auction the painting and to have the buyer pay all commissions directly to Sotheby's.  (A copy of the Sotheby's agreement is annexed hereto as Exhibit "F").

7

16.     On November 14, 2006, Sotheby's sold Martinson at auction.

17.     SANDS now claims he acted as an agent and is entitled to a 5%
commission on the Sotheby's sale.

18.     However, there is no evidence of SANDS attempting to sell Martinson, no
evidence of a agreement, and no evidence of an express agreement authorizing SANDS
to act as THE BERNSTEINS agent.  Furthermore, SANDS has not provided evidence of
exclusivity to act as THE BERNSTEINS agent but there is clear and unambiguous
evidence of Sotheby's exclusivity with regards to Martinson.  (See Exhibit "F").

## ARGUMENT

### I.     STANDARD OF REVIEW

19.     Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court
shall grant a motion for summary judgment if "there is no genuine issue of material fact
and that the moving party is entitled to a judgment as a matter of law".  In making this
determination, the Court's role is not to resolve disputed factual issues, but rather to reach
a conclusion as to whether there exists "a genuine and material issue for trial" Hudson
Hotels Corp. v. Choice Hotels Int'l, Inc. 995 F.2d 1173, 1175 (2d Cir. 1993).

20.     An issue of fact is deemed "genuine" when evidence is such that a
reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  With regards to materiality, substantive law
dictates what facts are considered material.  McCarthy v. Dun & Bradstreet Corp., 382
F.3d 184, 202 (2d Cir. 2007) (citing Jeffreys v. City of New York, 426 F.3d 549, 553 (2d
Cir. 2005)).  Only facts that may "affect the outcome of the suit under the governing law"

8

are relevant and thereby, "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

21.    The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. See Consarc Corp. v. Marine Midland Bank, N.A. 996 F.2d 568, 572 (2d Cir. 1993) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L.E.2d 142 (1970). This burden may be met by demonstrating that there is a lack of evidence to support the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

22.    Once the moving party satisfies their initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" and cannot rest merely on "some metaphysical doubt as to the material facts." Powell v. Nat'l Bd. Of Med. Examiners, 364 F3d 79, 84 (2d Cir. 2004) (internal quotations and citations omitted). To defeat the motion, the non-moving party must thereby show "sufficient evidence supporting the claimed factual dispute" McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968))

## II.    ELECTRIC CHAIR

23.    THE BERNSTEINS are entitled to summary judgment dismissing the plaintiff's complaint because there is no admissible evidence in the record that THE BERNSTEINS entered into an enforceable agreement of any kind with SANDS to extend past 1998. Additionally, the plaintiffs cannot meet their burden because there is no genuine dispute of fact with respect to *any* element of SANDS case.

24.     The 1997 agreement was never satisfied because SANDS did not succeed

in having the Electric Chair authenticated.  Both parties signed the agreement in 1997 and

the terms of the agreement were clearly agreed to last for the remainder of 1997.

Specifically, the agreement states in clear and unambiguous language that Electric Chair

needs to be "authenticated *this year*" in order for THE BERNSTEINS to "sell it back to

[SANDS] for the same price."  (Italics added).

25.     The 1998 unilateral extension of the 1997 agreement is also invalid

because the new contact does not properly operate as a novation of the 1997 agreement.

In re Balfour MacLaine Int'l Ltd., 85 F.3d 68, 83 (2d Cir. 1996).  When a party wishes to

demonstrate novation to an existing agreement, their must be: (1) a previously valid

obligation; (2) an agreement by all parties to a new agreement; (3) an extinguishments of

the old agreement; and (4) a valid new agreement.  Id.  Here, SANDS has been unable to

provide any evidence indicating a bilateral agreement for a new agreement, or any

evidence THE BERNSTEINS agreed to terminate the old agreement.

26.     Furthermore, even though no time for performance was agreed upon in the

1997 agreement, New York law finds an indefinite time period unreasonable.  Guilbert v.

Gardner, 480 F.3d 140, 149 (2nd Cir. 2007).  That is, an agreement that does not contain a

provision fixing its duration will be interpreted to last for a reasonable amount of time.

Falco Construction Corp. v. Summit General Contracting Corp., 760, F.Supp. 1004, 1012

(E.D.N.Y. 1991).  A time period of ten (10) years was more than reasonable for SANDS

to achieve Electric Chair's authenticity.  Therefore, any interpretation of the agreement

allowing for an indefinite period is clearly unreasonable.

27.    Even assuming, argumendo, that the 1998 agreement is valid, nothing in the agreement forbids THE BERNSTEINS from demanding the return of Electric Chair and terminating the agreement.  In fact, the 1997 agreement clearly acknowledges that SANDS is "holding [Electric Chair] on [THE BERNSTEINS] behalf."  No evidence has been provided to show that SANDS is authorized to hold for any period of time Electric Chair after THE BERNSTEINS have demanded return of same.

28.    SANDS has not provided any evidence to show that the December 14, 1997 agreement was ever reaffirmed by THE BERNSTEINS with the intention of extending service indefinitely.  Furthermore, the record is devoid of any evidence entitling SANDS to possess the painting for an indefinite period while rebuffing any and all requests by THE BERNSTEINS to retrieve Electric Chair.

## III.    MARTINSON COFFEE

29.    First and foremost, SANDS has not provided proof of any agreement, written and oral, or evidence of any express agreement demonstrating SANDS' authority to act as THE BERNSTEINS agent for the sale of Martinson.  Furthermore, SANDS has not provided any evidence of exclusivity or any evidence to show that Sotheby's is not the exclusive dealer of Martinson.

30.    Additionally rendering any supposed oral agreement void, the Statute of Frauds requires that any agreement valued at more than $500 dollars must be recorded in writing.  N.Y. U.C.C. § 2-201(1).  In order for an agreement to satisfy the Statute of Frauds, the agreement must: (1) provide evidence of the existence of the agreement; (2) be signed by the party against whom the agreement is sought; (3) specify the goods for which the party contracted.  In re Bayou Hedge Fund Litigation, 534 F.Supp.2d 405, 420

11

(S.D.N.Y., 2007). Absence of any of these factors renders oral agreements void. <u>KSW</u> <u>Mechanical Contractors, Inc. v. Eco-Care Corp.</u>, 259 A.D.2d 671, 672 (N.Y. 1999). Once again, SANDS did not provide any evidence of an oral agreement or any evidence of THE BERNSTEINS signature.

31.     Likewise, the email exchanges do not qualify as a agreement because SANDS has not shown evidence of THE BERNSTEINS signature or any confirmation that THE BERNSTEINS knowingly entered a agreement. <u>KSW Mechanical Contractors,</u> 259 A.D.2d at 672. That is, a simple exchange of emails is not sufficient to meet the signature requirement. See <u>Rosenfeld v. Basquiat</u>, 78 F.3d 84, 93 (2nd Cir. 1996) (held that exchange of emails is sufficient to establish agreement only when emails contain explicit information on price, date, information on deposit, specific goods involved, and signatures of parties involved). Here, the emails contain THE BERNSTEINS explicit statement to SANDS that they were considering signing a agreement with Sotheby's but would only reconsider if SANDS provided a ready, willing, and able buyer. SANDS failed to provide an actual buyer or proof of a potential buyer, thus prompting THE BERNSTEINS to sign exclusively with Sotheby's.

32.     Absent proof of an agreement, exclusivity, or evidence of a ready, willing and able buyer, SANDS fails to meet their burden. Therefore, there is no genuine dispute of fact with respect to any element of SANDS' case and THE BERNSTEINS Motion for Summary Judgment should be granted.

## IV.   LEAVE TO AMEND ANSWER

33.     In the alternative, THE BERNSTEINS respectively request right to amend their answer to assert a counter-claim against SANDS for conversion.

12

34.    According to Rule 15 of the Federal Rules of Civil Procedure, the right to amend a claim "shall be freely given when justice so requires." Further, absent any evidence of undue delay or bad faith, Rule 15 must be followed. Foman v. Davis, 371 U.S. 178, 182 (1962). Here, THE BERNSTEINS have been deprived of Electric Chair for over ten (10) years. THE BERNSTEINS have requested the paintings return, but SANDS has unlawfully converted it. Therefore, THE BERNSTEINS should be granted leave to amend their answer.

## CONCLUSION

35.    In sum, THE BERNSTEINS motion for summary judgment should be granted because SANDS has not met their burden to produce any admissible evidence indicating a dispute of fact with respect to any element of their case.

36.    For the foregoing reasons it is respectfully requested that the Defendant's Motion for Summary Judgment dismissing plaintiff's Complaint, as a matter of law, be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          July 11, 2008

                                   Respectfully submitted,

                                   Joshua D. Lindy ( 7107 )
                                   **BRODY, BENARD & BRANCH LLP**
                                   Attorneys for Defendants
                                   **LEONARD BERNSTEIN and
                                   JANE HOLMES BERNSTEIN**
                                   205 Lexington Ave., 4th Floor
                                   New York, New York 10016
                                   (212) 679-7007

13