

Barry I. Levy (BL 2190)
Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, New York 11556
(516) 357-3000



*Counsel for Plaintiffs, Nicholas Sands and Sands & Company, Inc. .*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NICHOLAS SANDS, and SANDS & COMPANY, INC.

Plaintiffs,

-against-

LEONARD BERNSTEIN and JANE HOLMES
BERNSTEIN,

Defendants.

-----------------------------------------------------------------X

Docket No.:_____ (        )

**Plaintiff Demands a
Trial By Jury**

2007 NOV -6 PM 12:51
S.D. OF N.Y.
U.S. DISTRICT COURT
FILED

## COMPLAINT

Plaintiffs, Nicholas Sands and Sands & Company, Inc., by and through their counsel,

Rivkin Radler LLP, as and for their Complaint against the Defendants, hereby allege as follows:

## NATURE OF THE ACTION

1.    This is an action for breach of a contract seeking payment of an agent's fee in the

amount of One Hundred Seventy Thousand Dollars ($170,000.00) that is owed to the Plaintiffs

by the Defendants for services duly rendered relating to the sale of an original painting by Andy

Warhol titled "Martinson Coffee" ("Martinson"). Additionally the Plaintiffs seek a declaratory

judgment permitting them to retain possession of another original Warhol work titled "Painting

X"[1] ("Painting X") in accordance with the terms of a separate written agreement pursuant to which Plaintiffs have undertaken the responsibility for authenticating "Painting X" and have a right to purchase "Painting X" at an agreed upon price if they are successful in having the work deemed authentic.

## THE PARTIES

2.    Plaintiff, Sands & Company, Inc., ("S&C"), is New York Corporation with its principal place of business located at 30 East 76th Street, 7th Floor, New York, New York 10021.

3.    Plaintiff, Nicholas Sands, ("Mr. Sands"), is a citizen of the State of New York, residing in New York, New York.

4.    Defendants, Leonard Bernstein and Jane Holmes Bernstein ("Defendants" or the "Bernsteins") are citizens of the Commonwealth of Massachusetts residing at 60 Babcock Street, Apartment 95, Brookline, Massachusetts 02446.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.    In addition, this Court has jurisdiction over the subject matter of the claims asserted in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and §2202.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) a substantial part of acts and/or events giving rise to the claims alleged herein occurred within this District.

---

[1]    The true identity of the work has not been publicly disclosed so as to protect its value in the event that it can be authenticated by Plaintiffs.

## FACTUAL BACKGROUND

7.      S&C is a New York based company that has been in business for more than 15 years.  S&C deals in fine works of art, including the acquisition and sale of such works for private collectors, and specializes on works involving the late Andy Warhol.  Mr. Sands is a well respected and recognized expert in the art world and has been at all relevant times the owner and president of S&C.

8.      Defendants are private art collectors with whom Mr. Sands and S&C have had numerous business and personal dealings over the past 15 years.   Defendants are the former owners of "Martinson" and are the owners of "Painting X".

A.   **Painting X**

9.      In 1997, defendants entered into a contract with the Defendants, pursuant to which the Defendants engaged Plaintiffs' services and expertise in an attempt to have "Painting X" deemed an authentic Warhol work (the "Agreement").  The Agreement authorized Plaintiffs, for as long as "needed", to retain physical possession of "Painting X" while actively attempting to establish its authenticity.  Additionally, the Agreement provided that upon establishing the authenticity of "Painting X," Plaintiffs would have the right to purchase "Painting X" for an agreed upon price.

10.      The Andy Warhol Art Authentication Board (the "Warhol Board") is at present, and has been at all relevant times, the only official body recognized by the art world authorized to certify the authenticity of Warhol works.

11.      Since 1997, Plaintiffs have been continuously and actively engaged in a battle to have "Painting X" authenticated by the Warhol Board.   In connection with that fight, Plaintiffs have expended hundreds of hours of their time and spent significant sums of money to consult

3

with and present opinions of several nationally recognized experts in an attempt to have the authenticity of "Painting X" recognized by the Warhol Board.

12.    Notwithstanding Plaintiffs efforts, the Warhol Board has denied the authenticity of "Painting X" on at least 2 separate occasions since 1997. While the Warhol Board has never revealed its reasons for rejecting the authenticity of "Painting X", the rejections have not been attributable to or as a result of any lack of diligence or effort by Plaintiffs. The Warhol Board has been discredited in an article in Vanity Fair magazine as well as in a BBC documentary for its secretive and arbitrary practices and apparent conflict of interest among the board members.

13.    On July 13, 2007, a class action lawsuit was commenced in the Southern District of New York alleging that the Warhol Board and other defendants have engaged in a series of fraudulent and manipulative acts, and asserts claims under the Federal anti-trust laws, the Lanham Act and various common law claims, including fraud. See Joe Simon-Whelan et. al. v. The Andy Warhol Foundation, Docket No.: 07 CV 6423 (LTS)(the "Warhol Litigation"). The Warhol Litigation seeks, among other relief, an order replacing the Warhol Board as the sole authenticating authority for Warhol works or alternatively, to have the Warhol Board's methods for authentication amended.

14.    The uncertainty surrounding the Warhol Board and the entire authentication process has cast serious doubt on past rejections, and presents the real possibility that Plaintiffs will succeed in the near future of having "Painting X" authenticated. From the time of the agreement in 1997 up until April of 2007, Plaintiffs and Defendants had ongoing discussions and exchanged correspondence concerning Plaintiffs' efforts to secure authentication of "Painting X" throughout which Defendants (i) always reaffirmed the substance of the 1997 Agreement and (ii) never requested that the work be returned. On July 17, 2007 (4 days after the Warhol

Litigation was filed) Defendants had their counsel write a letter to Plaintiffs demanding the return of "Painting X".

15.    Pursuant to the 1997 Agreement, there is no basis for the Defendants demand as Plaintiffs are still actively seeking to have "Painting X" authenticated and are in the process of preparing to have "Painting X" resubmitted to the Warhol Board for authentication. In addition, the return of "Painting X" to the Defendants would render the Plaintiffs incapable of having the work authenticated.

**B.    Martinson**

16.    In April of 2006, Defendants and Plaintiffs began discussing the potential sale of a Warhol Work known as "Martinson". Ultimately those discussions developed to a point where in late June/early July 2006, Defendants engaged Plaintiffs to acts as Defendants' exclusive broker for the sale of "Martinson".

17.    Pursuant to the Agreement, Plaintiffs were charged exclusively with the responsibility of identifying and securing a willing buyer for the work at the sale price of Five Million Dollars ($5,000,000.00) from which Plaintiffs would be paid a commission in the amount of Five Hundred Thousand Dollars ($500,000.00). Thus, Plaintiffs were authorized to offer the work for sale and to conclude the transaction provided that Defendants netted $4,500,000.00. From the time of the engagement, Plaintiffs kept the Defendants continuously apprised of their efforts and the status of potential buyers.

18.    Ultimately, on July 23, 2006, Plaintiffs informed Defendants that several buyers had expressed interest at the quoted price, and that one was willing to negotiate to purchase "Martinson" upon a physical inspection of the work in accordance with standard industry practice. That same day, Plaintiffs communicated with the Defendants <u>via</u> e-mail, requesting

that they have the work shipped to New York at Plaintiffs' cost and covered by the Plaintiffs' insurer, so that the potential buyer could conduct the inspection.

19.    The next day, July 24, 2006, Defendants sent an e-mail to Plaintiffs informing that they were (i) unwilling to have the work inspected as requested, (ii) terminating all discussions, and (iii) consigning the work to Sotheby's to put up for auction. In that same e-mail, Defendants offered to modify their existing agreement and to pay Plaintiffs an agent's fee based upon the final sale price. Although Plaintiffs were not obligated to modify the Agreement, they reluctantly elected to do so because of their longstanding relationship with the Defendants, agreeing to accept the offer of a 5% agent's fee based on the final sale price of "Martinson" at auction at Sotheby's, and to forego his commission under the terms of the original agreement,

20.    From July of 2006 up to and including the date of the auction, Plaintiffs continued to serve in an advisory capacity to the Defendants in their dealings with Sotheby's concerning the sale of "Martinson."

21.    On or about November 14, 2006, "Martinson" was sold at auction for Three Million Four Hundred Thousand Dollars ($3,400,000.00) to an unidentified buyer.

22.    On or about January 9, 2007, and continuously since that date, Plaintiffs have demanded payment of their agent's fee in the amount of One Hundred Seventy Thousand Dollars ($170,000.00) based on final sale price of "Martinson." Despite due and repeated demand, Defendants have refused to make payment to Plaintiffs without justification.

### FIRST CAUSE OF ACTION
### (Declaratory Judgment Relief Under 28 U.S.C. § 2201)

23.    Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 22 of this Complaint as if fully set forth at length herein.

24.here is an actual case and controversy between Plaintiffs and Defendants as to the Plaintiffs' right to possess "Painting X" while they are actively seeking to have the work authenticated.

25.     Plaintiffs contend that pursuant to the 1997 Agreement that they are entitled to retain possession of "Painting X" while they are actively seeking to have the work authenticated. By virtue of the July 17, 2007 letter from Defendants' counsel it is clear that Defendants dispute the existence and/or application of the 1997 Agreement,

26.     Accordingly, Plaintiffs respectfully seek a judgment from this Court pursuant to 28 U.S.C. §2201, declaring that Plaintiffs are entitled to retain possession of "Painting X" while they are actively seeking to have the work authenticated, including but not limited to the time period during the pendency of the Warhol Litigation, as the outcome of that litigation may affect the rights of the Plaintiffs; and such other and further relief as this court may deem just and proper.

### SECOND CAUSE OF ACTION
**(Breach of Contract)**

27.     Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 26 of this Complaint as if fully set forth at length herein.

28.     At all relevant times, there existed an agreement between the Plaintiffs and Defendants pursuant to which the Defendants were obligated to pay Plaintiffs 5% of the sale price of "Martinson" resulting from the auction of the work at Sotheby's in November of 2007.

29.     Plaintiffs have at all times complied with the terms of the agreement and are entitled to payment from the Defendants in the amount of One Hundred Seventy Thousand

Dollars ($170,000.00) based upon the agreement and the sale of Martinson's for the sum of $3,4000,000.00 on November 14, 2006.

30.    Plaintiffs have made repeated demands for payment from the Defendants since January 2007. Despite due demand, Defendants have refused to make payment and said refusal is without justification.

31.    As a result of the Defendants breach of contract, Plaintiffs have been damaged in the amount of One Hundred Seventy Thousand Dollars ($170,000.00) plus interest from November 14, 2006.

## JURY DEMAND

32.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs demands that a Judgment be entered in their favor and against the Defendants, as follows:

A.    On the First Cause of Action, a judgment pursuant to 28 U.S.C. §2201 declaring that: (i) Plaintiffs are entitled to retain possession of "Painting X" while they are actively seeking to have the work authenticated, including but not limited to the time period during the pendency of the Warhol Litigation, as the outcome of that litigation may affect the rights of the Plaintiff; and (ii) such other and further relief as this court may deem just and proper; and

B.    On the Second Cause of Action, compensatory damages in the amount of One Hundred Seventy Thousand Dollars ($170,000.00), together with costs plus interest; and

C.    Any other relief the Court deems just and proper.

Dated:      Uniondale, New York
              November 5, 2007

RIVKIN RADLER LLP

By:_____

        Barry I. Levy (BL 2190)
        A Member of the Firm
926 RexCorp Plaza
Uniondale, New York  11556
(516) 357-3000

*Counsel for Plaintiffs, Nicholas Sands and
Sands & Company, Inc.*

2083900 v1

9

Jody C. Benard, Esq. (JCB 6563)
BRODY, BENARD & BRANCH, LLP
Attorneys for Defendants
*LEONARD BERNSTEIN and*
*JANE HOLMES BERNSTEIN*
205 Lexington Avenue, 4th Floor
New York, New York 10016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X    Docket No: 07 CIV 9824

NICHOLAS SANDS, and SANDS & COMPANY, INC.,

                                  **Plaintiff,**           **ANSWER**

      -against-

LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN,

                                  **Defendant.**

--------------------------------------------------------------------------X

## COMPLAINT

       Defendant, **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** by their

attorneys, **BRODY, BENARD & BRANCH, LLP**, as and for a Answer to the plaintiffs'

Complaint, sets forth as follows:

### NATURE OF THE ACTION

       FIRST:       Defendants **LEONARD BERNSTEIN and JANE HOLMES**

**BERNSTEIN** deny each and every allegation contained in Paragraph "1" of the plaintiffs'

Complaint.

## THE PARTIES

SECOND:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** admit each and every allegation contained in Paragraphs "2", "3" and "4" of the plaintiffs' Complaint.

## JURISDICTION AND VENUE

THIRD:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** deny each and every allegation contained in Paragraphs "5" and "6"    of the Plaintiffs' Complaint and respectfully refers all questions of law to the determination of the Trial Court.

## FACTUAL BACKGROUND

FOURTH:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** deny each and every allegation contained in Paragraph "7" of the plaintiffs' Complaint.

FIFTH:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** admit each and every allegation contained in Paragraph "8",of the plaintiffs' Complaint.

SIXTH:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** deny each and every allegation contained in Paragraphs "9", "10", "11", "14", "15", "16", "17", "18", "19", "20" and "22" of the plaintiffs' Complaint.

280487.1

SEVENTH:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** admit each and every allegation contained in Paragraphs "12", "13" and "21" of the plaintiffs' Complaint.

## FIRST CAUSE OF ACTION

EIGHTH:    In response to Paragraph "23" of the plaintiffs' Complaint, defendants repeat, reiterate and reallege each and every assertion and denial contained in Paragraphs "FIRST" through "SEVENTH" hereinabove as though more fully set forth at length herein.

NINTH:    Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** deny each and every allegation contained in Paragraphs "24", "25" and "26" of the plaintiffs' Complaint.

## SECOND CAUSE OF ACTION

TENTH:    In response to Paragraph "27" of the plaintiffs' Complaint, defendants repeat, reiterate and reallege each and every assertion and denial contained in Paragraphs "FIRST" through "NINTH" hereinabove as though more fully set forth at length herein.

ELEVENTH:  Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** deny each and every allegation contained in Paragraphs "28", "29", "30", and "31" of the plaintiffs' Complaint.

280487.1

TWELFTH:   Defendants **LEONARD BERNSTEIN and JANE HOLMES BERNSTEIN** admit each and every allegation contained in Paragraph "32" of the plaintiffs' Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

THIRTEENTH:        This Court lacks subject matter jurisdiction.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

FOURTEENTH:        The Complaint fails to state a cause of action recognized at law.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

FIFTHTEENTH:        Plaintiff's claims are barred by waiver estoppel and unclean hands.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

SIXTEENTH:        Plaintiff was engaged in conduct that constitutes waiver of their rights under any agreement or contract that may exist.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

SEVENTEETH:        Plaintiff's claims are barred by the applicable statute of frauds.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

EIGHTEENTH:        Plaintiff breached its duty of good faith and fair dealing.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

NINETEENTH:  Plaintiff breached any agreement that may exist.


## AS AND FOR A  EIGHTH AFFIRMATIVE DEFENSE

TWENTIETH:   Plaintiff has no legally viable breach of contract claim.


## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

TWENTY-FIRST:      Defendants actions were performed in the exercise of absolute

right, proper and/or justified.


## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

TWENTY-SECOND:    Plaintiff's claims are barred as a result of a failure of

consideration.


## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

TWENTY-THIRD: To the extent the damages set forth in plaintiff's Complaint could

have been wholly or in part avoided by reasonable effort of the plaintiff, its agents servants

and/or employers and without undue burden, risk or expense, said damages were the result of

plaintiff's failure to mitigate and may not be recovered from defendants LEONARD

BERNSTEIN and JANE HOLMES BERNSTEIN.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

TWENTY-FOURTH: The causes of action are barred by reason of the expiration of the

applicable Statute of Limitations.


*WHEREFORE*, defendants demand judgment dismissing the plaintiffs' Verified

Complaint, together with the costs and disbursements of this action.

Dated: New York, New York
      November 15, 2007

Yours, etc.

Jody C. Benard, Esq.(JCB 6563)
Attorneys for Defendants
LEONARD BERNSTEIN and JANE HOLMES
BERNSTEIN
205 Lexington Avenue, 4th Floor
New York, New York 10016
(212) 679-7007
Our File No.: 400.40336


TO:    Barry I. Levy, Esq.
      RIVKIN RADLER, LLP.
      Attorneys for Plaintiffs
      926 RexCorp Plaza
      Uniondale, New York 11556
      (516) 357-3000

280487.1

# AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK   )
                        ) ss.:
COUNTY OF NEW YORK)

     **MAGDA SALAZAR,** being duly sworn, says: I am not a party to this action, am over 18 years of age and I reside in the Borough of the Bronx, State of New York.

     On the 26TH day of November, 2007, I served the within **ANSWER,** upon:

**Barry I. Levy, Esq.**
**RIVKIN RADLER, LLP.**
**Attorneys for Plaintiffs**
**926 RexCorp Plaza**
**Uniondale, New York 11556**
**(516) 357-3000**

the addresses designated by said attorneys for that purpose by depositing a true copy of said enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of United States Postal Service for regular mail with certificate of mailing within the State of New York.

_MAGDA SALAZAR_

Sworn to before me this
26TH day of November, 2007

NOTARY PUBLIC

MATTHEW RICE
Notary Public, State of New York
No. 02RI6127026
Qualified in New York County
Commission Expires May 23, 2009

# SANDS & COMPANY
### FINE ART

TEL (212) 535-0969
FAX (212) 772-3116
E-MAIL: SANDSARTS@AOL.COM

February 15, 1997

Dr. Leonard Bernstein
60 Babcock Street, Apt. 95
Brookline, MA 02146
FAX: 617-734-7739              RE:    Warhol *Electric Chair* painting

Dear Len:

It was good speaking with you the other night.

The rejection of the *Electric Chair* by the Warhol Committee is unfortunate for us both, but as I pledged to you, I will continue in my efforts to have the piece authenticated by taking this matter to a "higher level." After showing the painting to certain well-known authorities on Warhol and enlisting their positive opinions and support, we will be in a stronger position to challenge the Committee's rejection, and this is what I plan to do.

Of course you are the owner of the painting, which I am holding on your behalf, however it is my understanding that if I succeed in having the piece authenticated this year, you will sell it back to me for the same price (i.e. $65,000). This would appear to be obvious, but for the sake of clarity, I would be grateful if you will kindly sign below and return to me by fax.

I wish you and Jane a safe and pleasant trip to England, and look forward to speaking with you with when you get back. Best personal regards.

Yours truly,                          Agreed as above:

*Nick*                                 [signature]

Nicholas J. Sands                      Dr. Leonard Bernstein

BOX 893 LENOX HILL STATION • NEW YORK, NY 10021-0002

# SANDS & COMPANY
### FINE ART

TEL (212) 535-0969
FAX (212) 772-3116
E-MAIL: SANDSARTS@AOL.COM

February 15, 1997 / DECEMBER 14, 1997

Dr. Leonard Bernstein
60 Babcock Street, Apt. 95
Brookline, MA 02146
FAX: 617-734-7739

RE:   Warhol *Electric Chair* painting

Dear Len:

It was good speaking with you the other night.

The rejection of the *Electric Chair* by the Warhol Committee is unfortunate for us both, but as I pledged to you, I will continue in my efforts to have the piece authenticated by taking this matter to a "higher level." After showing the painting to certain well-known authorities on Warhol and enlisting their positive opinions and support, we will be in a stronger position to challenge the Committee's rejection, and this is what I plan to do.

Of course you are the owner of the painting, which I am holding on your behalf, however *i.e.* it is my understanding that if I succeed in having the piece authenticated this year, you will *1998 or* sell it back to me for the same price (i.e. $65,000). This would appear to be obvious, but *longer if* for the sake of clarity, I would be grateful if you will kindly sign below and return to me *needed —* by fax.

I wish you and Jane a safe and pleasant trip to England, and look forward to speaking with you with when you get back. Best personal regards.

Yours truly,

*Nick*

Nicholas J. Sands

Agreed as above:

Dr. Leonard Bernstein

RENEWED DECEMBER 14, 1997 AS ABOVE:

X  DR. LEONARD BERNSTEIN

BOX 893 LENOX HILL STATION • NEW YORK, NY 10021-0893

SANDS 00008

**From:** Leonard Bernstein [lbernst@bu.edu]
**Sent:** Friday, November 25, 2005 1:17 PM
**To:** 'Sandsarts@aol.com'
**Subject:** RE: REPLY FROM NICHOLAS SANDS...

Hi Nick,

Re Cheryl, if you do not get to Boston before our dinner with her on12/14 (we leave for Trinidad on 12/15) then I'll ask her to contact you.

Re Electric Chair, of course you can have it back whenever you need it. After all it is to both our advantage that it get straightened out. We would just like to have it here as it has been what- 4 years or so that it's been in your place. There is no rush to get it here and let's wait until April/May as we would like to plan a weekend in NYC and could carry it back.

Congrats on the Noguchi sale!

Xs,

Lenn

Leonard Bernstein  D.M.D., M.P.H.
60 Babcock Street #95
Brookline, MA 02446-5920

> -----Original Message-----
> **From:** Sandsarts@aol.com [mailto:Sandsarts@aol.com]
> **Sent:** Thursday, November 24, 2005 7:08 PM
> **To:** lbernst@bu.edu
> **Subject:** REPLY FROM NICHOLAS SANDS...
>
>
>
> Hey Lenn,
>
> Happy Thanksgiving and sorry not to reply sooner... I have just been overwhelmed.
>
> Would love to meet your friend Cheryl and to know more about the MFA's collecting interests. I have several Warhols here at this moment, in fact, and know of many others elsewhere... including some that I have sold. Perhaps you can give her my phone number, and invite her to give me a call?
>
> Re Electric Chair...
> If you really want the piece back, then of course I will be happy to send it, with the understanding (as you mentioned) that I may continue to work on it as always, and can have the piece back if I need it. As you know, I have spent an enormous amount of time working on this "project," and would like to see it through no matter how long it takes. As I mentioned earlier, some time ago I purchased a sculpture by Noguchi and submitted it to the Noguchi Authentication Board (i.e. Noguchi Museum). They initially rejected it as a fake, but then I put together a massive presentation, and finally won them over. They agreed with me that the piece was authentic, and in fact I just sold it last week... for a very nice price.

I can't tell you how grateful I am to you and Jane for the infinite patience you have shown me... love to you both. As far as my shipping the piece, would it be okay if I arrange this after you return from Trinidad? I am really jammed up at the moment, planning trips to London and elsewhere... kindly let me know.

As always,
Nicky


Nicholas J. Sands, President
Sands & Company Fine Art, Inc.
30 East 76th Street (at Madison Ave.), 7th floor
New York, NY 10021
T. 212-988-3900 F. 212-772-3116
sandsarts@aol.com

## Leonard Bernstein

**From:**   Leonard Bernstein [lbernst@bu.edu]
**Sent:**   Wednesday, April 04, 2007 9:20 AM
**To:**   'Sandsarts@aol.com'
**Subject:** RE: FROM NICHOLAS SANDS... OUR PHONE CONVERSATION TONIGHT

Hello Nick,

We are back from our trip. It was very interesting and enjoyable all around.

Re the copies of e-mails you sent, we find nothing new in them and we especially covered what you put in bold in the last one on the phone with you on the 24th. That was fully covered and explained by us to you. We are irritated that you have taken no cognizance of what was discussed with you in well over a half hour on the phone.

During that conversation we also asked you to return the Electric Chair painting to us upon our return. We are back and want you to return it to us. We want it returned its original frame as you did not have our permission to change the frame. I trust the frame you put on has not made any differences or changes in the canvas or the pigments.

Speaking of the frame, when we saw it in your apartment you explained that you did it to hide the rejection mark on the back made by the Warhol Foundation people. You admitted that you did it to deceive people and even recounted to us how a friend of yours asked you about whether it was rejected by the Warhol Foundation and you told us you told him to look to see if there was any rejection stamp on it.

In your opening in this review e-mail you state that it is not your intention "to give you a hard time here". Given the threatening tone of e-mails you sent while we were in Trinidad and coupled with your not recognizing what we spoke about at length on the phone and the comments and bolding typeface you used here, we feel that you are actually harassing us and we don't like it.

At this point, we will do nothing further until the Electric Chair is returned to us.

L&J

>        -----Original Message-----
>        **From:** Sandsarts@aol.com [mailto:Sandsarts@aol.com]
>        **Sent:** Sunday, February 25, 2007 2:25 AM
>        **To:** lbernst@bu.edu
>        **Subject:** FROM NICHOLAS SANDS... OUR PHONE CONVERSATION TONIGHT
>
>        Hey Len,
>
>        It was good talking with you and Jane tonight, and as you asked me to send you copies of the emails I mentioned (in which I re-confirmed your offer to me at $4.5 net), I am pleased to send them to you below.

10/1/2007

**Leonard Bernstein**

**From:** Leonard Bernstein [lbernst@bu.edu]
**Sent:** Tuesday, April 24, 2007 12:44 PM
**To:** sandsarts@aol.com

Nick,

Re e-mail to you dated April 4, 2007 about returning the "Electric Chair" painting back to us, we have not as yet received it.

We are leaving for Trinidad on May 12th and want the painting in our possesion before we leave.

Have you made arrangements yet to send it to us?

L

Leonard Bernstein, DMD, MPH
60 Babcock Street #95
Brookline, MA 02446-5920
617-734-7739

**Leonard Bernstein**

| | |
|---|---|
| **From:** | Leonard Bernstein |
| **To:** | 'Sandsarts@aol.com' |
| **Subject:** | RE: REPLY FROM NICHOLAS SANDS... |

Hey Nick,

Was 6:30 AM because you had not slept yet?

Thank for the info, a big help.

Sorry to hear about the problem but welcome to the world. I have been stolen from, lent money which was never returned etc etc. I even once caught an accountant stealing from my brother and I. However, that one taught me a great lesson which ultimately worked to my advantage. The IRS Feds gave him a 3 year suspended sentence as I believe he was stealing from other clients. I hope it all works out for you and Nick.

Of course I will speak to you; you said a few days ago you would call but didn't hear from you. I suggest you call before we leave on the 29th or in Trinidad if you can't.

I realistically don't think that the MFA will be able to do it but it's possible. That leaves you and Sotheby's. Unless I have something concrete from you (or the MFA), our bias is to go under the hammer with Sotheby's. The market is strong and they have a lot of clout. We know that if it goes under the hammer, you don't know what will transpire but we are willing to take that chance in this market. Just giving the painting to you to offer for sale is just too nebulous. If you have identified a buyer(s), then we need a firm sales figure which could tempt us to take your bird in the hand for the hammer in the bush.

Get some rest.

Lenn


Leonard Bernstein  D.M.D., M.P.H.
60 Babcock Street #95
Brookline, MA 02446-5920


-----Original Message-----
From: Sandsarts@aol.com [mailto:Sandsarts@aol.com]
Sent: Wednesday, June 21, 2006 6:46 AM
To: lbernst@bu.edu
Subject: REPLY FROM NICHOLAS SANDS...

1



# Sotheby's

1334 YORK AVENUE   NEW YORK NY 10021   212 606.7000   WWW.SOTHEBYS.COM

## CONSIGNMENT AGREEMENT

July 28, 2006

Mr. Leonard and Ms. Jane Bernstein
60 Babcock Street, #95
Brookline, MA 02446

Thank you for consigning property to Sotheby's. This confirms our agreement under which property which is consigned by you and is listed on Schedule I hereto (the "Property") will be offered by us for sale at auction, subject to the following terms and our standard Conditions of Sale and Terms of Guarantee to be printed in the catalogue for the sale, by which you hereby agree to be bound. As used herein, "we," "us" and "ours" mean Sotheby's, Inc., and "you" and "your" mean Leonard Bernstein and Jane Bernstein, jointly and severally.

1.    The Auction. The Property will be offered for sale in our Contemporary Art auction, Part I, to be held on November 14, 2006, subject to postponement for reasons beyond our control. In connection with the auction, we will have absolute discretion as to (a) consulting any expert either before or after the sale, (b) researching the provenance of the Property either before or after the sale, (c) providing catalogue and other descriptions as we believe appropriate, (d) the marketing and promotion of the sale and (e) the manner of conducting the sale.

2.    Commission. You will not pay us any selling commission on the Property. You authorize us to charge the buyer and retain for our account a commission on the Property (the "buyer's premium"). The Conditions of Sale in the catalogue for the auction will state the rate at which the buyer's premium will be assessed against the buyer, and such rate will be a percentage of the hammer price of the Property.

3.    Settlement. On the Settlement Date (as defined below), we will mail or wire transfer to you pursuant to your signed instructions the sale proceeds we collect and receive, after deducting our buyer's premium (the "net sale proceeds"), unless the purchaser has notified us of intention to rescind the sale (as provided in paragraph 9). The "Settlement Date" will be the date that is thirty-five days after the last session of the auction.

# Sotheby's

We have no obligation to enforce payment by any purchaser. If a purchaser does not pay, and you and we do not agree on another course of action, we reserve the right to cancel the sale and return the Property to you. Notwithstanding the preceding sentence, if we pay you any portion of the net sale proceeds for the Property and have not collected from the purchaser of the Property payment of the amount we paid to you, simultaneously with, and to the extent of, any such payment by us to you, you assign to us any and all rights you may have against such purchaser, whether at law, in equity or under the Conditions of Sale. You agree to execute any documents we may reasonably request evidencing this assignment and you agree that all of your representations, warranties and indemnities set forth in this Agreement shall apply to us or the purchaser, as the case may be, with respect to the Property. You authorize us, in our sole discretion, to impose on the purchaser and retain for our account a late charge if payment is not made in accordance with the Conditions of Sale.

4.      Reserves. The Property will be offered subject to a reserve to be mutually agreed upon prior to the date of the sale. However, we may sell the Property at a price below the reserve, provided that we pay you in accordance with paragraph 3 above, the agreed reserve. No reserve for a lot will exceed its low presale estimate.

You agree not to bid on the Property. Although we shall be entitled to bid on your behalf up to the amount of the reserve, you shall not instruct or permit any other person to bid for the Property on your behalf. If, however, you violate your foregoing commitment and you or your agent becomes the successful bidder on the Property, you will pay us the buyer's premium on the hammer price, the Property may be sold without any reserve, and you will not be entitled to the benefit of any warranties under the Conditions of Sale or Terms of Guarantee.

There will be no commission if the Property is bought-in for failing to reach its reserve. In the event the Property is bought-in, we will announce that such lot has been "passed", "withdrawn", "returned to owner", or "bought-in".

5.      Representations and Warranties; Indemnity. You jointly and severally represent and warrant to us and the purchaser that you have the right to consign the Property for sale; that it is now, and through and including its sale will be kept, free of all liens, claims and encumbrances of others, including, but not limited to, claims of governments or governmental agencies; that good title and right to possession will pass to the purchaser free of all liens, claims and encumbrances; that you have provided us with any information you have concerning the

2

# Sotheby's ᴱˢᵀ·¹⁷⁴⁴

provenance of the Property; that you have no reason to believe that the Property is not authentic or is counterfeit; that where the Property has been imported into the United States, the Property has been lawfully imported into the United States and has been lawfully and permanently exported as required by the laws of any country (including any laws or regulations applicable in the European Union) in which it was located; that required declarations upon the export and import of the Property have been properly made and any duties and taxes on the export and import of the Property have been paid; that you have paid or will pay any and all taxes and/or duties that may be due on the net sale proceeds of the Property and you have notified us in writing of any and all taxes and/or duties that are payable by us on your behalf in any country other than the United States; and that there are no restrictions on our right to reproduce photographs of it. We retain the exclusive copyright to all catalogue and other illustrations and descriptions of the Property created by us.

You jointly and severally agree to indemnify and hold us and each purchaser harmless from and against any and all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the breach or alleged breach of any of your agreements, representations or warranties in this Agreement.

Your joint and several representations, warranties and indemnity will survive completion of the transactions contemplated by this Agreement.

6.    <u>Expenses</u>. We agree to bear all expenses related to the sale of the Property, including but not limited to: (a) catalogue illustration, production and mailing, (b) packing and shipping to our premises and (c) any agreed upon advertising.

7.    <u>Loss or Damage to Property</u>. We will pay you the Value of the Property (as defined below) in the event of loss or damage as set forth below, from the time we receipt the Property and while the Property is in our custody and control. The maximum amount of our liability to you resulting from loss or damage to the Property shall not exceed the Value of such Property (as defined below). For purposes of this limitation of liability, the Value of the Property is: (a) for Property which has been sold, the hammer price (excluding buyer's premium), (b) for Property which has failed to sell at auction, the reserve, or (c) for Property not yet offered for sale, the mean of our latest presale estimates. We will pay you the Value of such Property for any total loss, and simultaneously with such payment, all title and interest to the Property shall pass to us. Neither we nor our insurer will be responsible for Property that is not within our custody and control or liable for damage to frames or glass covering prints, paintings or other works, for damage

3

# Sotheby's

occurring in the course of any process undertaken by independent contractors employed with your consent (including restoration, framing or cleaning), or for damage caused by changes in humidity or temperature, inherent conditions or defects, normal wear and tear, war, acts of terrorism, nuclear fission or radioactive contamination, or chemical, bio-chemical or electromagnetic weapons.

8.      Withdrawal.  You may not withdraw the Property from sale after the date on which you sign this Agreement.  Regardless of whether we have previously issued a receipt, published a catalogue including the Property or advertised its sale, we may withdraw the Property at any time before sale if in our sole judgment (a) there is doubt as to its authenticity or attribution, (b) there is doubt as to the accuracy of any of your representations or warranties, or (c) you have breached any provision of this Agreement.  If we withdraw the Property under (b) or (c) of this paragraph 8, you must within ten days of our notice to you of withdrawal pay us a withdrawal fee equal to 15% of the mean of our latest presale estimates for the withdrawn Property, as well as all out-of-pocket expenses incurred by us up to and including the date of withdrawal (the "Withdrawal Fee").  If the Property is withdrawn by you in breach of this Agreement, you will pay us a Withdrawal Fee as well as any special, incidental or consequential damages incurred as a result of your breach, notwithstanding anything to the contrary in this Agreement.  If the Property is withdrawn under (a) above, you will not be charged a Withdrawal Fee and, subject to any liens against or claims to the Property, the Property will be returned to you at our expense.

9.      Rescission.  You authorize us to rescind the sale of the Property in accordance with the Conditions of Sale and Terms of Guarantee, or if we learn that the Property is inaccurately described in the catalogue, or if we learn that the Property is a counterfeit (a modern forgery intended to deceive) or if we determine in our sole judgment that the offering for sale of the Property has subjected or may subject us and/or you to any liability, including liability under the warranty of title or warranty of authenticity included in the Terms of Guarantee.  If we receive from a purchaser notice of intention to rescind and we determine that the Property is subject to rescission under the Terms of Guarantee or as otherwise set forth above, we will credit the purchaser with the purchase price, you will return to us any sale proceeds for such Property paid by us to you or to a third party as directed by you, and we will return the Property to you upon your reimbursing us for expenses incurred in connection with the rescinded sale, and paying us any other amounts you owe us or any of our affiliated entities.

# Sotheby's
EST.1744

10.    Private Sales.  If the Property fails to reach its reserve and is bought-in for your account, you authorize us, as your exclusive agent, for a period of 60 days following the auction, to sell the lot privately for a price that will result in a payment to you of not less than the agreed reserve.  In such event, your obligations to us hereunder with respect to such lot are the same as if it had been sold at auction.

11.    Treatment of Unsold Property.  If the Property remains unsold for any reason after the auction, we will notify you.  If the Property has not been sold privately pursuant to paragraph 10, and if it is not reconsigned to us for sale on mutually agreed-upon terms or picked up within 60 days after such notification, we will return it to you at our expense.

12.    Estimates; Catalogue Descriptions.  Presale estimates, if any, are intended as guides for prospective bidders.  We make no representation or warranty of the anticipated selling price of the Property and no estimate anywhere by us of the selling price of the Property may be relied upon as a prediction of the actual selling price.  Estimates included in receipts, catalogues or elsewhere are preliminary only and are subject to revision by us from time to time in our sole discretion.

We  will not be liable for any errors or omissions in catalogue or other descriptions of the Property and make no guarantees, representations or warranties whatsoever to you with respect to the Property, its authenticity, attribution, legal title, condition, value or otherwise.

13.    Use of Name.  We may designate the Property when we offer it for sale, advertise or otherwise promote the sale, both before or after the auction, as you and we may mutually agree.

14.    Legal Status.  If you are acting as an agent for someone who is not signing this Agreement, you and your principal jointly and severally assume your obligations and liabilities hereunder to the same extent as if you were acting as principal.

15.    Introductory Commission.    You authorize us to pay an introductory commission to Susan Forrester out of our commissions specified in this Agreement.

16.    Amendment.  Neither you nor we may amend, supplement or waive any provision of this Agreement other than by means of a writing signed by both parties.

17.    Privacy.    Sotheby's, its subsidiaries and affiliates ("Sotheby's Group") will record any information that you supply to us or that we obtain about you in its data systems shared within Sotheby's Group.  Your information will be kept confidential within

5

# Sotheby's

Sotheby's Group.  From time to time Sotheby's Group may send you information about its sales and events, or about products and services of other organizations with which it has a relationship.

18.    Miscellaneous.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York.  In the event of a dispute hereunder, you agree to submit to the exclusive jurisdiction of the state courts of and the federal courts sitting in the State and County of New York. This Agreement shall be binding upon your heirs, executors, beneficiaries, successors and assigns, but you may not assign this Agreement without our prior written consent.  Neither party shall be liable to the other for any special, consequential or incidental damages. This Agreement, including the Schedule hereto, and the Conditions of Sale and any Terms of Guarantee, constitute the entire agreement between the parties with respect to the transactions contemplated hereby and supersede all prior or contemporaneous written, oral or implied understandings, representations and agreements of the parties relating to the subject matter of this Agreement. You agree that you will not disclose the terms of this Agreement to any third party without our prior written consent, except to attorneys and accountants on a need-to-know basis, or as a result of valid legal process compelling the disclosure, provided you first give us prompt written notice of such service of process and allow us, if we deem it appropriate, to obtain a protective order. Any notices given hereunder to you or us shall be in writing to the respective address indicated on the first page of this Agreement (or to such other address as you or we may notify the other in writing) and shall be deemed to have been given five calendar days after mailing to such address or one business day after delivery by hand or telecopier. You agree to provide us, upon our request, verification of identity in an appropriate form. The paragraph headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

# Sotheby's EST.1744

Please confirm your agreement with the foregoing by dating, signing and returning to us the duplicate copy of this Agreement.

SOTHEBY'S, INC.

By:

ACCEPTED AND AGREED TO:

Leonard Bernstein

Jane Bernstein

Dated: August 3, 2006

Tobias Meyer
Principal Auctioneer
License #0958677

7

# Sotheby's EST. 1744

## SCHEDULE I

### PROPERTY

### ESTIMATES

Andy Warhol
*Martinson Coffee*, 1962
Silkscreen ink and pencil on linen
20 x 16 inches

$2,000,000-3,000,000

# Sotheby's

<sup>1334 YORK AVENUE  NEW YORK NY 10021  212 606.7000  WWW.SOTHEBYS.COM</sup>

August 10, 2006

Mr. Leonard and Ms. Jane Bernstein
60 Babcock Street, #95
Brookline, MA 02446

Dear Mr. and Mrs. Bernstein:

This letter shall constitute an amendment to the Consignment Agreement between you and Sotheby's, Inc. ("Sotheby's") dated July 28, 2006, (the "Agreement"). Terms used herein without definition shall have the same meanings given such terms in the Agreement.

1.    You and we both agree that the third sentence of paragraph 7 of the Agreement shall be amended to read as, "(c) for Property not yet offered for sale, $4,000,000."

2.    Except as amended hereby, the Agreement shall remain in full force and effect.

3.    This letter shall be governed by and construed and enforced in accordance with the laws of the State of New York.

If the above accurately reflects your agreement, please so indicate by signing below.

SOTHEBY'S, INC.

By: _____

ACCEPTED AND AGREED TO:

_____
Leonard Bernstein

_____
Jane Bernstein

Dated: _____

Tobias Meyer
Principal Auctioneer
License #0958677

# Sotheby's
### Consignment Listing

67½ Chestnut St.
Boston, MA 02108
617-387-1393

Source Code: B O S

**Consignor Name**
Mr. Leonard + Mrs. Jane Bernstein

**Address 1**
60 Babcock Street #95

**Address 2**

**Address 3**

**City** Brookline  **State** MA  **Zip Code** 02446

**Country** USA

**Telephone 1** 617-731-7739  **Telephone 2**

**Shipped Via** USart  **Rect. By**

**Comments**
insure for $4,000,000

| Item | Dept. Code | Description | Prelim. Low Est. Prelim. High Est. | Final Low Est. Final High Est. | Prelim. Reserve Final Reserve |
|------|-----------|-------------|-----------------------------------|-------------------------------|-------------------------------|
| 3FHJ6 | | Andy Warhol | $3,000,000 – $3,000,000 | | |
| | | "Mattinson Coffee" 1962 | | | |
| | | Silkscreen ink and pencil on linen | | | |
| | | 20 x 16" | | | |

This receipt is subject to the conditions of receipt printed on the reverse side. Sotheby's will have no liability for loss of, or damage to, property, whether caused by Sotheby's negligence or otherwise, unless estimates of value have been written by Sotheby's in the "Preliminary Estimates" column next to the item. See paragraphs 6 and 7 on reverse.

| Pay to Name | | | | Contract Type □ Private □ Dealer □ Other | Commission High   Low |
|-------------|--|--|--|-------------------------------------------|------------------------|
| Address 1 | | | | Bought in Commission | Risk of Loss |
| Address 2 | | | | Received By | |
| Address 3 | | | | Received From | |
| City | State | | Zip Code | Date Received | |
| Country | | | | 8/11/06 | |