UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

NICHOLAS SANDS and SANDS &
COMPANY, INC.,

                    Plaintiffs,        07 Civ. 9824

      -against-                   OPINION

LEONARD BERNSTEIN and JANE HOLMES
BERNSTEIN,

                   Defendants.

----------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        RIVKIN RADLER LLP
        926 RexCorp Plaza
        Uniondale, NY  11556-0926
        By:  Barry I. Levy, Esq.
            John J. Vobis, Jr., Esq.
            Max Gershenoff, Esq.

        Attorneys for Defendants

        BRODY, BENARD & BRANCH LLP
        205 Lexington Avenue, 4th Floor
        New York, NY  10016
        By:  Joshua D. Lindy, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1|21|09

**Sweet, D.J.**

The defendants Leonard Bernstein ("Bernstein") and
Jane Holmes Bernstein (collectively, the "Bernsteins" or the
"Defendants") have moved under Rule 56, Fed. R. Civ. P. for
summary judgment dismissing the complaint of plaintiffs Nicholas
Sands ("Sands") and Sands & Company ("S&C") (collectively, the
"Plaintiffs").

Upon the facts and conclusions set forth below, the
Bernsteins' motion to dismiss the first cause of action of the
complaint is granted, and the motion to dismiss the second cause
of action is denied.

The motion recounts some difficulties encountered in
the disposition of works of art by Andy Warhol ("Warhol").

## Prior Proceedings

The Plaintiffs filed their complaint on November 6,
2007, seeking in their first cause of action a declaration that
they are entitled to retain the painting "Electric Chair" owned
by the Bernsteins while seeking its authentication and alleging
in their second cause of action the breach of a contract

1

entitling them to a fee in connection with the Bernsteins' sale
of a painting entitled "Martinson Coffee".

No discovery has been undertaken.

The instant motion was heard and marked fully
submitted on October 15, 2008.

**The Facts**

The facts have been set forth initially by the
Bernsteins by affidavit and memorandum and then in response to
the Plaintiffs' Response and Statement of Additional Facts by a
Statement pursuant to Local Rule 56.1. Affidavits have been
submitted by the Bernsteins and Sands. The material facts are
not in dispute except as noted below.

**The Parties**

S&C is a New York corporation with a principal place
of business in New York City and is a fine art gallery, dealer,
and consultant. Sands is its president and sole owner.

2

The Bernsteins are Massachusetts citizens and own a painting entitled Electric Chair and owned a painting entitled Martinson Coffee. The parties entered into a relationship with respect to the disposition of the two paintings and the authenticity of Electric Chair.

## Electric Chair

Bernstein is the sole owner of the painting Electric Chair. In 1997, Bernstein sought to have Electric Chair authenticated as an original work of art by the late Andy Warhol. The Andy Warhol Authentication Board ("Warhol Board") is the only body currently authorized to certify works of art by Warhol. The Bernsteins agreed to let the Plaintiff seek certification through the Warhol Board.

In February 1997, the Warhol Board rejected Electric Chair as an authentic Warhol.

On February 15, 1997, the parties entered in to a letter agreement by which the parties agreed that, if Sands was able to have the piece authenticated within the year, Bernstein would sell it to him for $65,000. The letter agreement follows:

3

# SANDS & COMPANY
## FINE ART

TEL (212) 535-0969
FAX (212) 772-3116
E-MAIL: SANDSARTS@AOL.COM

February 15, 1997

Dr. Leonard Bernstein
60 Babcock Street, Apt. 95
Brookline, MA 02146
FAX: 617-734-7739

RE:   Warhol *Electric Chair* painting

Dear Len:

It was good speaking with you the other night.

The rejection of the *Electric Chair* by the Warhol Committee is unfortunate for us both, but as I pledged to you, I will continue in my efforts to have the piece authenticated by taking this matter to a "higher level." After showing the painting to certain well-known authorities on Warhol and soliciting their positive opinions and support, we will be in a stronger position to challenge the Committee's rejection, and this is what I plan to do.

Of course you are the owner of the painting, which I am holding on your behalf, however it is my understanding that if I succeed in having the piece authenticated this year, you will sell it back to me for the same price (i.e. $65,000). This would appear to be obvious, but for the sake of clarity, I would be grateful if you will kindly sign below and return to me by fax.

I wish you and Jane a safe and pleasant trip to England, and look forward to speaking with you with when you get back. Best personal regards.

Yours truly,

*Nick*

Nicholas J. Sands

Agreed as above:

Dr. Leonard Bernstein

BOX 893 LENOX HILL STATION • NEW YORK, NY 10021-0002

4.

During the course of 1997, the Plaintiffs were unable
to authenticate Electric Chair or overturn the Warhol Board's
rejection of same.

On December 14, 1997, the parties amended the letter
agreement to extend to "1998 or longer if needed."  The amended
letter agreement follows:

## SANDS & COMPANY
### F I N E   A R T

TEL (212) 535-0969
FAX (212) 772-3116
E-MAIL: SANDSARTS@AOL.COM

February 15, 1997 / DECEMBER 14, 1997

Dr. Leonard Bernstein
60 Babcock Street, Apt. 95
Brookline, MA 02146
FAX: 617-734-7739

RE:   Warhol *Electric Chair* painting

Dear Len:

It was good speaking with you the other night.

The rejection of the *Electric Chair* by the Warhol Committee is unfortunate for us both,
but as I pledged to you, I will continue in my efforts to have the piece authenticated by
taking this matter to a "higher level." After showing the painting to certain well-known
authorities on Warhol and enlisting their positive opinions and support, we will be in a
stronger position to challenge the Committee's rejection, and this is what I plan to do.

Of course you are the owner of the painting, which I am holding on your behalf, however *i.e.*
it is my understanding that if I succeed in having the piece authenticated this year, you will    /1998  or
sell it back to me for the same price (i.e. $65,000). This would appear to be obvious, but   *longer if*
for the sake of clarity, I would be grateful if you will kindly sign below and return to me   *needed —*
by fax.

5

I wish you and Jane a safe and pleasant trip to England, and look forward to speaking with you with when you get back. Best personal regards.

Yours truly,                                                    Agreed as above:

Nicholas J. Sands                                              Dr. Leonard Bernstein

RENEWED DECEMBER 14, 1997 AS ABOVE:

X _____
DR. LEONARD BERNSTEIN

BOX 893 LENOX HILL STATION • NEW YORK NY 10021 0000

The Warhol Board has denied the authenticity of Electric Chair on at least two separate occasions since 1997. From the time of the agreement in 1997 up to and until April of 2007, Sands and the Bernsteins had ongoing discussions and exchanged correspondence concerning the authentication of Electric Chair.

Certain of the emails between the parties with respect to the Electric Chair follow:

**From:** Leonard Bernstein {lbernst@bu.edu}
**Sent:** Friday, November 25, 2005 1:17 PM
**To:** 'Sandsarts@aol.com'
**Subject:** RE: REPLY FROM NICHOLAS SANDS...
Hi Nick,

Re Cheryl, if you do not get to Boston before our dinner with her on12/14 (we leave for Trinidad on 12/15) then I'll ask her to contact you.

Re Electric Chair, of course you can have it back whenever you need it. After all it is to both our advantage that it get straightened out. We would just like to have it here as it has been what- 4 years or so that it's been in your place. There is no rush to get it here and let's wait until April/May as we would like to plan a weekend in NYC and could carry it back.

Congrats on the Noguchi sale!

Xs,

Lenn

Leonard Bernstein D.M.D., M.P.H.
60 Babcock Street #95
Brookline, MA 02446-5920

> -----Original Message-----
> **From:** Sandsarts@aol.com [mailto:Sandsarts@aol.com]
> **Sent:** Thursday, November 24, 2005 7:08 PM
> **To:** lbernst@bu.edu
> **Subject:** REPLY FROM NICHOLAS SANDS...
>
>
> Hey Lenn,
>
> Happy Thanksgiving and sorry not to reply sooner... I have just been overwhelmed.
>
> Would love to meet your friend Cheryl and to know more about the MFA's collecting interests. I have several Warhols here at this moment, in fact, and know of many others elsewhere... including some that I have sold. Perhaps you can give her my phone number, and invite her to give me a call?
>
> Re Electric Chair...
> If you really want the piece back, then of course I will be happy to send it, with the understanding (as you mentioned) that I may continue to work on it as always, and can have the piece back if I need it. As you know, I have spent an enormous amount of time working on this "project," and would like to see it through no matter how long it takes. As I mentioned earlier, some time ago I purchased a sculpture by Noguchi and submitted it to the Noguchi Authentication Board (i.e. Noguchi Museum). They initially rejected it as a fake, but then I put together a massive presentation, and finally won them over. They agreed with me that the piece was authentic, and in fact I just sold it last week... for a very nice price.

I can't tell you how grateful I am to you and Jane for the infinite patience you have shown me... love to you both. As far as my shipping the piece, would it be okay if I arrange this after you return from Trinidad? I am really jammed up at the moment, planning trips to London and elsewhere... kindly let me know.

As always,
Nicky

Nicholas J. Sands, President
Sands & Company Fine Art, Inc.
30 East 76th Street (at Madison Ave.), 7th floor
New York, NY 10021
T. 212-988-3900 F. 212-772-3116
sandsarts@aol.com

## Leonard Bernstein

**From:** Leonard Bernstein [lbernst@bu.edu]

**Sent:** Wednesday, April 04, 2007 9:20 AM

**To:** 'Sandsarts@aol.com'

**Subject:** RE: FROM NICHOLAS SANDS... OUR PHONE CONVERSATION TONIGHT

Hello Nick,

We are back from our trip. It was very interesting and enjoyable all around.

Re the copies of e-mails you sent, we find nothing new in them and we especially covered what you put in bold in the last one on the phone with you on the 24th. That was fully covered and explained by us to you. We are irritated that you have taken no cognizance of what was discussed with you in well over a half hour on the phone.

During that conversation we also asked you to return the Electric Chair painting to us upon our return. We are back and want you to return it to us. We want it returned its original frame as you did not have our permission to change the frame. I trust the frame you put on has not made any differences or changes in the canvas or the pigments.

Speaking of the frame, when we saw it in your apartment you explained that you did it to hide the rejection mark on the back made by the Warhol Foundation people. You admitted that you did it to deceive people and even recounted to us how a friend of yours asked you about whether it was rejected by the Warhol Foundation and you told us you told him to look to see if there was any rejection stamp on it.

In your opening in this review e-mail you state that it is not your intention "to give you a hard time here". Given the threatening tone of e-mails you sent while we were in Trinidad and coupled with your not recognizing what we spoke about at length on the phone and the comments and bolding typeface you used here, we feel that you are actually harassing us and we don't like it.

At this point, we will do nothing further until the Electric Chair is returned to us.

L&J

-----Original Message-----
**From:** Sandsarts@aol.com [mailto:Sandsarts@aol.com]
**Sent:** Sunday, February 25, 2007 2:25 AM
**To:** lbernst@bu.edu
**Subject:** FROM NICHOLAS SANDS... OUR PHONE CONVERSATION TONIGHT


Hey Len,

It was good talking with you and Jane tonight, and as you asked me to send you copies of the emails I mentioned (in which I re-confirmed your offer to me at $4.5 net), I am pleased to send them to you below.

According to Sands, Bernstein stated that Sands could "just keep the painting" as it was "no use to him."

On July 13, 2007, a class action lawsuit was commenced in the Southern District of New York alleging that the Warhol Board and other defendants have engaged in a series of fraudulent and manipulative acts, asserting claims under the Federal antitrust laws, the Lanham Act and various common law claims, including fraud. See Simon-Whelan v. The Andy Warhol Foundation for the Visual Arts, No. 07 Civ. 6423 (LTS) (the "Warhol Litigation"). The Warhol Litigation seeks, among other relief, an order replacing the Warhol Board as the sole authenticating authority for Warhol works or alternatively, to have the Warhol Board's methods for authentication amended.

On July 17, 2007, the Bernsteins demanded the return of Electric Chair.

**Martinson Coffee**

10

The Bernsteins were the sole owners of the Warhol painting entitled Martinson Coffee ("Martinson").

On or about April 2006, the parties began discussions of the possible sale of Martinson. According to Sand, during 2006, he researched the value of Martinson, shopped the painting to potential buyers, and offered to act as the Bernsteins' agent in Martinson's sale.

At the same time, the Bernsteins were also in discussions with Sotheby's to sell the painting directly through the auction house.

On July 28, 2006, the Bernsteins signed an agreement with Sotheby's to have it auction the painting and have the potential buyer pay all commissions directly to Sotheby's. On November 14, 2006, Sotheby's sold Martinson at auction.

According to Sands, he first discussed the sale of Martinson with the Bernsteins in 1996, when he contacted the Bernsteins to see whether they would be willing to sell the painting.

On June 21, 2006, the Bernsteins wrote to Sands and advised him that they would sell Martinson through Sotheby's unless Sands could produce a "concrete" offer. On July 12, 2006, the Bernsteins again wrote to Sands requesting Sands to produce a "concrete" offer. According to Sands, he contacted them by telephone and indicated that he could sell Martinson for approximately $5 million less Sands' 10 percent commission (i.e., $500,000.00).

Sands contacted the Bernsteins several times during July 2006 to advise them that buyers' agents had expressed strong interest in purchasing the painting and to ask them to ship Martinson to Sands so that Sands' clients could view it.

On July 24, 2006, the Bernsteins wrote to Sands with respect to an agent's fee based upon Martinson's final sale price at Sotheby's auction. That e-mail follows:

Subj:     **Re: FROM NICHOLAS SANDS... MARTINSON'S**
Date:     7/24/2006 10:57:30 AM Eastern Standard Time
From:     lbernst@bu.edu
To:       Sandsarts@aol.com

Hi Nick,

Jane and I had a long talk over the weekend as I cannot take all this
any longer. I have been too much pre-occupied with this and it enters
my mind too often during the day. We have decided to end all
discussions etc with all parties and have decided to go along with
Sotheby's and put it up for auction. It's not that we don't love you or
not appreciate your efforts and interest and will compensate you with a
finders/agents/whatever fee based upon the final sale price which we
realize may be less than what your client seems willing to pay. If your
client has not been willing to accept the authenticity on face and that
Tobias did so and that it was in the recent MFA show and is in the
Catalogue Raisonnne, then he may view and bid on it when it is up for
auction. Please understand Nick, I need closure on this.

Xs,

Lenn


Quoting Sandsarts@aol.com:

>
>
> Dear Len,
> I received another call on the  Martinson's, and they are now asking to see
> it. Can we please make arrangements  to have it shipped here?? as we have
> discussed?
> I will cover all of the expenses  (pickup, packing, crating, etc.), and the
> painting will be insured against all  risk during transit and during stay at
> the full consignment price of $4.5  million net. A certificate of
> insurance will
> be issued in your name, under my  own fine arts policy by my fine
> art-specialist insurance  agent:
> Mr. David  Genser
> GENSER  INSURANCE
> 800 South Street,  Suite 600
> Waltham, MA  02453
> Tel. 781 398  1387
> ?who works with  Lloyd's of London and represents many top galleries and
> museums.
> For pickup, crating and shipping out  of Boston, David  recommends using:
> Richard Wright Shipping & Storage
> 124 Turnpike Street,  W.
> Bridgewater, MA 02379
> Tel. 508 586  2030
> ?though I will contact  the Harvard University Art Museums for an additional
> recommendation.
> *********************************
> The person I am dealing with (for  the buyer) said that until he sees the
> actual painting, he has no way of knowing  if I can produce it. I
> think that when

> he does see the painting, that will  speak volumes; but aside from that, my
> credibility is now at stake...
> As the situation is a live one, and  every day counts, I hope that we can act
> quickly. As soon as the painting is  here, I will put the buyer to the test
> and give him a firm deadline to buy (as  instructed by you). If he
> does not act
> by that date, I will immediately  deliver the painting to Sotheby's? or
> anywhere else you tell me to deliver  it.
> Whether I succeed in making this  sale or not, also, I will donate to the
> Museum of Fine Arts in Boston ? in your  honor ? a painting from my
> collection
> by the artist Richard Pettibone (value  $30,000)? whose works I know they
> collect.
> Please let me hear from you today?  thanks!
> Love to you  both,
> Nicky  xox
>
>
> Nicholas J. Sands, President
> Sands & Company Fine Art,  Inc.
> 30 East 76th Street (at Madison Ave.), 7th floor
> New York, NY  10021
> T. 212-988-3900 F. 212-772-3116
> _sandsarts@aol.com_ (mailto:sandsarts@aol.com)
>
>
>
>

According to Sands, he spoke with Bernstein by telephone, and Bernstein offered that the agent's fee would be a five percent commission on the Martinson sale price at a Sotheby's auction. Sands asserts that Bernstein stated that if Sands would forego the 10 percent commission that he stood to earn in a private sale and abandon his claims regarding the Bernsteins' failure to offer Martinson exclusively for sale through Sands and to produce Martinson for inspection by Sands' prospective buyers, then the Bernsteins would pay Sands a five percent agent's fee on the proceeds of a Sotheby's auction. Sands asserts that he accepted the Bernsteins' offer, and only agreed to abandon his rights under the original agreement in consideration for the five percent agent's fee that the Bernsteins promised.

Bernstein by affidavit and email has denied any commitment to Sands in connection with the Martinson sale.

**The Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

16

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

## The Bernsteins Are Entitled to the Return of Electric Chair

The parties' contract states: "Of course you [Bernstein] are the owner of the painting, which I [Sands] am holding on your behalf . . . ." On its face, this language does not unambiguously give Plaintiffs the right to hold the painting while seeking to have it authenticated. However, Sands has affirmed that "[t]he Bernsteins are well aware of the fact that S&C cannot secure Electric Chair's authentication without having the actual painting in its possession." Sands Decl. ¶ 17. Assuming, for the purposes of this motion, that the contract

17

therefore gives Plaintiffs the right to hold the painting while seeking to have it authenticated, Plaintiffs are nevertheless not entitled to the relief they seek because the contract has expired.

No definite time of performance was agreed upon in the 1998 agreement, which, as amended, states "if I [Sands] succeed in having this piece authenticated this year, i.e. 1998 or longer if needed - you will sell it back to me for the same price (i.e. $65,000)." "Where an agreement does not specify a date or time for performance, New York law implies a reasonable time period." Guilbert v. Gardner, 480 F.3d 140, 149 (2nd Cir. 2007). In determining what constitutes a reasonable time for performance, the courts consider "the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties and the possibility of prejudice or hardship to either one . . . ." Zev v. Merman, 533 N.E.2d 669, 669 (N.Y. 1988); see also Smith Barney, Harris Upham & Co. v. Liechtensteinische Landesbank, 886 F. Supp. 114, 117 (S.D.N.Y. 1994). "The question of what is a reasonable period of time for performance of a particular contract is a question of fact for a jury, unless the facts are undisputed, in which case the question becomes one appropriate for summary judgment." Id. (quoting Enzo Biochem, Inc. v.

18

Johnson & Johnson, 87 Civ. 6125 (KMW), 1992 WL 309613, at *6
(S.D.N.Y. Oct. 15, 1992)).

Here, the original contract provided for performance
within a year, i.e. by the end of 1997.  The amended contract
extended the time for performance through the end of 1998 "or
longer if needed."  Although this language is unclear, it cannot
be reasonably read to extend the life of the contract over ten
years.  Eleven years have now passed, and Plaintiffs seek a
declaration that they are entitled to maintain possession of the
painting for as long as "they are actively seeking to have the
work authenticated, including but not limited to the time period
during the pendency of the Warhol Litigation."  As of the date
of this opinion, the Warhol Litigation, commenced in July 2007,
has not progressed past the motion to dismiss stage.  There can
be no guarantee that it will not continue for years to come.
Further, there is no evidence as to how soon a determination as
to the painting's authenticity would follow on a favorable
outcome in that case.  The relief sought by Plaintiff is
essentially the right to maintain possession of the painting
indefinitely.  Such relief would be inconsistent with the
language and the history of the parties' agreement, and would
wrongfully deprive Bernstein of property that undisputedly
belongs to him.

19

Bernstein is entitled to the return of his conceded property, Electric Chair, the arrangement between the parties having outlived a reasonable period.

## A Factual Dispute Bars Dismissal
## Of the Second Cause of Action

As set forth above, according to Sands, he agreed to accept a 5% commission on the sale of Martinson, amounting to $170,000, in exchange for dropping his claim as agent for its sale.  The Bernsteins deny the existence of such a commitment.

A factual dispute bars the motion of the Bernsteins to dismiss the second cause of action to the complaint.

## Conclusion

Upon the facts and conclusions set forth above, the Bernsteins' motion to dismiss the first cause of action of the Plaintiffs is granted and their motion to dismiss the second cause of action is denied.

It is so ordered.

**New York, NY**
**January ⌒⌀, 2009**

ROBERT W. SWEET
U.S.D.J.